## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| SAN JUANITA ANCISO, | § | |
|     PLAINTIFF | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | 7:13-cv-00214 |
| STRIPES LLC d/b/a SSP PARTNERS, | § | |
| INC. d/b/a QUICK STUFF, | § | |
|     DEFENDANT | § | |

---

### OPPOSED MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION OF DEFENDANT, STRIPES LLC, SUCCESSOR BY MERGER TO SSP PARTNERS, A TEXAS GENERAL PARTNERSHIP

---

**TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, MCALLEN DIVISION:**

Defendant, **STRIPES LLC, SUCCESSOR BY MERGER TO SSP PARTNERS, A TEXAS GENERAL PARTNERSHIP, ("Defendant")** files this Motion to Stay Proceedings and Compel Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, and in accordance with the written arbitration agreement(s) signed by Plaintiff, San Juanita Anciso ("Plaintiff"), and to stay this action by formal order pending the resolution of Plaintiff's claims in arbitration.

### I.      Summary of Argument

1.1     Plaintiff has on at least three occasions acknowledged receipt and agreement to arbitration agreements while working for Defendant on and off since December 2007. All of the agreements were signed prior to the filing of her lawsuit.

---

1.2    The arbitration agreements to which Plaintiff agreed are valid and enforceable arbitration agreements, and Plaintiff's claims in this lawsuit are all within the scope of the arbitration agreements.

1.3    Moreover, any dispute about the enforceability of the arbitration agreements signed by Plaintiff is also a dispute that is subject to binding arbitration under the terms of the arbitration agreements.

1.4    Therefore, this action should be stayed and Plaintiff should be ordered to pursue her claims in arbitration pursuant to the valid arbitration agreements she signed.

## II.    Background Facts

2.1    SSP Partners, a Texas general partnership, used the "Stripes" name and operated Stripes convenience stores and gas stations in South Texas.[1]  Effective June 30, 2007, SSP Partners merged into S Interests Management Company, LLC, a Texas limited liability company, and subsequently changed its name to Stripes LLC.[2] Therefore, Stripes LLC is the successor by merger of SSP Partners.[3]  Stripes LLC is a wholly owned subsidiary of Susser Holdings, L.L.C., which is a wholly owned subsidiary of Stripes Holdings LLC, which is a wholly owned subsidiary of Susser Holdings Corporation, a publicly held corporation traded on the New York Stock Exchange.[4]

2.2    At all times relevant to Plaintiff's claims, Stripes LLC, as the successor by merger of SSP Partners, a Texas general partnership, operated Stripes Store No. 9634, the

---

[1] Affidavit of Otis Peaks, Exhibit A.
[2] Peaks Affidavit, Exh. A.
[3] Peaks Affidavit, Exh. A.
[4] Peaks Affidavit, Exh. A.

convenience store where Plaintiff alleges she was injured on July 14, 2012.[5]   At all relevant times, Stripes LLC, as the successor by merger of SSP Partners, employed Plaintiff while she worked at Stripes Store No. 9634.[6]

2.3    At all times relevant to her employment, Plaintiff was aware that disputes with Defendant relating to her employment or work-related injuries were subject to an agreement to arbitrate.  The agreement to arbitrate was expressly referenced in the employment applications she completed and signed, and she acknowledged arbitration agreements and procedures on at least three occasions.

2.4    Plaintiff applied for employment by Defendant on March 25, 2009 ("2009 Employment Application")[7] and signed a section of the application entitled "Agreement to Arbitrate", in which she expressly agreed that as a condition of being:

> considered an applicant for employment [she would arbitrate] any and all claims that may arise out of . . . employment by the Company [Susser Holdings, L.L.C. and Affiliates]. . . agree[d] to arbitrate under the Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures . . . any and all claims, disputes or controversies that exist now or arise later between me and the Company or between me and any Company employees, officers, members, owners or affiliated companies, including claims, disputes and controversies arising before, during and after my employment, if any, with the Company.  By way of example only, such claims include, but are not limited to, claims under federal, state, and local statutory or common law, the law of contract or tort, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, and claims for bodily injury or physical, mental or psychological injury without regard to whether such injury was sustained in the course and scope of employment.[8]

---

[5] Peaks Affidavit, Exh. A.
[6] Peaks Affidavit, Exh. A.
[7] Exh. A-1, Application for Employment, March 25, 2009.
[8] Exh. A-1, Application for Employment, March 25, 2009.

---

Plaintiff began working for Stripes on or about April 5, 2009, as shown by the Personnel Action Record.[9]

2.5     At all times relevant to Plaintiff's claims, Defendant was not a subscriber to the Texas Workers' Compensation Act.[10]   In place of providing workers' compensation insurance coverage, Defendant established an employee injury benefit plan under the federal Employee Retirement Income Security Act of 1974 ("ERISA") to provide medical, wage-replacement, dismemberment, burial and death benefits to its employees injured or killed in the course and scope of their employment.  Employees were given a summary plan description of the employee injury benefit plan in effect, and were asked to sign an election and arbitration agreement, by which an employee could indicate whether he or she elected to accept or reject participation in the plan.  Employees also received the Defendant's arbitration policy and procedures.

2.6     At the time she became employed in April 2009, the period relevant to her alleged work-related injury on July 14, 2012, Plaintiff received the Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description ("Susser Holdings SPD").[11]   The Susser Holdings Plan SPD references arbitration on the very first page and contains arbitration procedures.[12]   Plaintiff signed the Election and Arbitration Agreement ("Susser Holdings Plan Election and Arbitration Agreement")[13] by which she acknowledged receipt of the Susser Holdings SPD and elected to participate in the

---

[9]  Exh. A-2, Personnel Action Record.
[10]  Peaks Affidavit, Exh. A.
[11]  Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description.
[12]  Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description.
[13]  Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Election and Arbitration Agreement).

Susser Holdings, L.L.C. Employee Injury Benefit Plan ("Susser Holdings Plan")[14]   The

Susser Holdings Election and Arbitration Agreement clarifies that the employee is

electing to waive his/her right to a jury and agree to arbitration in exchange for eligibility

for the Susser Holdings Plan's benefits.[15]

2.7    The Susser Holdings Plan Election and Arbitration Agreement stated:

> I understand that if I am injured on the job, I am, by signing and <u>agreeing</u> to this Agreement, eligible under the Plan's terms for the medical, disability, death, burial and dismemberment benefits described in the Plan and summarized in the Summary Plan Description.  I understand that if I <u>reject</u> this Agreement, I will <u>not</u> be eligible for Plan Benefits.
>
> I understand and agree that the Plan's benefits are <u>not</u> workers' compensation benefits, but are provided <u>without</u> regard to my own fault or negligence, <u>without</u> the necessity of me initiating a lawsuit or arbitration, and <u>without</u> me proving that the Company (or one of its employees) was negligent in causing my injury (or death).
>
> I have received a copy of the Summary Plan Description of the Plan. I understand and agree that, if I am injured on the job at the Company, I will follow the rules and procedures described in the Summary Plan Description.[16] (emphasis original)

2.8    Plaintiff signed the Susser Holdings Election and Arbitration Agreement on April

4, 2009,[17] the same day she signed the Employee Acknowledgement of Receipt of the

Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures ("Susser

Holdings Policy and Procedures").[18]  The Susser Holdings Policy and Procedures

---

[14] Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Susser Holdings, L.L.C. Employee Injury Benefit Plan).
[15] Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Election and Arbitration Agreement).
[16] Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Election and Arbitration Agreement).
[17] Exhibit A-4, Election and Arbitration Agreement.
[18] Exh. A-5, Employee Acknowledgement of Receipt of the Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures.

provides additional guidance as to the procedures for arbitration of an employee's claims, either those involving failure to provide benefits under the Plan, bodily injury, or discrimination.[19]

2.9    Collectively, the Susser Holdings SPD[20] including the Susser Plan Election and Arbitration Agreement,[21] and Susser Holdings Policy and Procedures[22] shall be referred to herein as "the Susser Holdings Arbitration Agreement."   These documents were made available in Spanish, as well as English.[23]

2.10   Plaintiff has never revoked her election to participate in the Susser Holdings Plan.[24]   Further, subsequent to signing the Arbitration Agreement, Plaintiff received benefits under the Susser Holdings Plan in November 2009 for an earlier injury and in July 2012 for the alleged subject injury.[25]   In connection with her alleged July 2012 injury, she also authorized Providence Risk & Insurance Services, Inc., the third party administrator for the Susser Holdings Plan, to obtain the Release of her Protected Health Information, as shown by the HIPAA Authorization she signed.[26]

---

[19] Exhibit A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures).
[20]   Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description.
[21]   Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Election and Arbitration Agreement).
[22]   Exhibit A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures).
[23] Peaks, Exh. A; Exh. A-3, Plan de Beneficios por Lastimaduras Ocupacionales de Susser Holdings, L.L.C. Descripicion del Plan en Resumen; Acuerdo de Eleccion y Arbitraje; Politica y Procedimientos de Arbitracion de Susser Holdings, L.L.C. y Sus Companias Filiales.
[24] Peaks Affidavit, Exh. A.
[25] Peaks, Exh. A; Exh. A-6.
[26] Exh. A-7, HIPAA Authorization.

2.11   On April 4, 2013, Plaintiff sued Stripes LLC, a named party to the Susser Holdings Arbitration Agreement,[27] alleging that she had been injured while working as a Kitchen Helper/Worker at Stripes No. 9634 located on West 2nd Street in Mercedes, Texas.[28]   Plaintiff alleges that she was injured in the course and scope of her employment with Defendant when she "sustained a severe laceration to her right hand."[29]   Plaintiff alleges she sought treatment at the emergency room and was released to return to work.[30]   Plaintiff alleges she "took steps towards filing a Workers' Compensation claim," reported her injuries to her employer, and Defendant notified an insurance carrier to pay for Plaintiff's medical expenses.[31]   Plaintiff was sent for a drug test, which came back positive.[32]   Plaintiff was ultimately terminated.[33] Plaintiff alleges that Defendant discriminated and, ultimately, retaliated against her by terminating her because she sought benefits, which Defendant has shown were made available to her under an ERISA plan in which she elected to participate.   She also alleges Defendant unlawfully failed to maintain workers' compensation insurance.[34]   Plaintiff alleges she was subjected to disparate treatment due to her disabilities[35] and her age[36] and was retaliated against when she was terminated as "part of a larger unwritten plan or scheme of the Defendant corporation to discriminate against injured and older

---

[27] Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures, Exhibit A, pg. 1 (bottom of page).
[28] Plaintiff's Original Petition, ¶ 6.2.
[29] *Id.*
[30] *Id.* Defendant contends the date of her release was July 30, 2012.
[31] Plaintiff's Original Petition, ¶ 6.3.
[32] Plaintiff's Original Petition, ¶ 6.2.
[33] Plaintiff's Original Petition, ¶ 7.3.
[34] Plaintiff's Original Petition, ¶ 7.12.
[35] Plaintiff's Original Petition, ¶ 6.2.
[36] Plaintiff's Original Petition, ¶ 7.3.

employees."[37]   In addition and, in the alternative, Plaintiff asserts non-subscriber negligence.[38]  She also makes claims for libel, slander and defamation.[39]

### III.    Arguments and Authorities

**A.    Plaintiff has agreed to binding arbitration with Defendant.**

3.1    A party seeking to compel arbitration under the FAA must first establish the existence of an arbitration agreement subject to the FAA. *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (stating the first step in the two-step inquiry is whether there is a valid agreement to arbitrate)).

### 1.    The Arbitration Agreement obviously exists.

3.2    Here, Defendant has proven that Plaintiff agreed to arbitrate all the claims she has alleged in her suit.  Before being hired in 2009, she signed a section of the 2009 Employment Application that she "agree[d] to arbitrate under the Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures . . . any and all claims, disputes or controversies that exist now or arise later between me and the Company or between me and any Company employees, officers, members, owners or affiliated companies, including claims, disputes and controversies arising before, during and after my employment, if any, with the Company."[40]   After accepting employment, she also agreed to the Susser Holdings Plan Election and Arbitration Agreement[41] and the

---

[37] Plaintiff's Original Petition, ¶ 7.4.
[38] Plaintiff's Original Petition, ¶¶ 7.12.
[39] Plaintiff's Original Petition, ¶¶ 7.8 – 7.11.
[40] Exh. A-1, Susser Family of Companies Application for Employment, March 25, 2009.
[41] Exh. A-3, Election and Arbitration Agreement.

Susser Holdings Arbitration Policy.[42]  She accepted benefits under the Susser Holdings Plan for treatment of the alleged subject injury in July 2012. [43]

3.3    Plaintiff also signed the Susser Holdings Plan Election and Arbitration Agreement[44] and the Susser Holdings Arbitration Policy Agreement[45] on February 7, 2008, during an earlier period of employment, and accepted benefits under the Susser Holdings Plan in November 2009.[46]  She therefore elected to participate in the same plan and received benefits under the plan on two occasions, once occurring before the alleged injury the subject of her lawsuit.[47]

3.4    Further, during her first employment, Plaintiff received the Summary Plan Description for the SSP Partners Employee Injury Benefit Plan ("SSP Plan"),[48] and elected to participate in the SSP Plan by signing the SSP Partners Employee Injury Benefit Plan Election and Arbitration Agreement on December 28, 2007.[49]  She received the SSP Partners Arbitration Policy and Procedures[50] and signed the Employee Acknowledgement and Receipt of the SSP Partners Arbitration Policy and Procedures to that effect.[51]  The currently effective Susser Holdings Plan was established for the same purpose, requiring the same employee acknowledgements, providing the same benefits, containing the same representations as set out in

---

[42] Exh. A-3, Employee Acknowledgement.
[43] Peaks, Exh. A; Exh. A-6.
[44] Exh. A-8, Election and Arbitration Agreement.
[45] Exh. A-9, Employee Acknowledgement.
[46] Peaks, Exh. A; Exh. A-6.
[47] Peaks, Exh. A; Exh. A-6.
[48] Exh. A-10, SSP Partners Employee Injury Benefit Plan Summary Plan Description.
[49] Exh. A-11, SSP Partners Employee Injury Benefit Plan (Election and Arbitration Agreement).
[50] Exh. A-12, SSP Partners Arbitration Policy and Procedures.
[51]  Exh. A-13, Employee Acknowledgement of Receipt of the SSP Partners Arbitration Policy and Procedures.

paragraph 2.7 herein, and administered by the same third party administrator.[52]   The

Court may take judicial notice of the fact that the Susser Holdings Plan SPD, Susser

Holdings Plan, Susser Holdings Election and Arbitration Agreement and Susser

Holdings Arbitration Policy and Procedures are nearly identical to the SSP Partners

Employee Injury Benefit Summary Plan Description, Election and Arbitration Agreement

and Arbitration Policy and Procedures.   Further, at the time of her initial employment,

Plaintiff completed a Stripes Application for Employment ("2007 Application") on

December 27, 2007.[53]   She specifically signed a section entitled "Agreement to

Arbitrate," expressly agreeing that as a condition of being:

> considered an applicant for employment [she would arbitrate] any and all
> claims that may arise out of . . . employment by Susser Holdings . . .
> agree[d] to submit to binding arbitration (using the terms and conditions
> set forth in the Susser Holdings Arbitration Policy and Procedures) for any
> and all claims, disputes or controversies that now exist or may arise later
> between me and Susser Holdings or between me and Susser Holdings'
> employees, officers, owners or affiliated companies, including claims,
> disputes and controversies arising prior to, during and after my
> employment with Susser Holdings . . .   By way of example only, such
> claims include, but are not limited to, claims under federal, state, and
> local statutory or common law, the law of contract or tort, such as the Age
> Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964,
> as amended, the Americans with Disabilities Act, and claims for bodily
> injury or physical, mental or psychological injury without regard to whether
> such injury was sustained in the course and scope of employment.[54]

She was hired by Defendant effective December 28, 2007.[55]

3.5      There can be no dispute that Plaintiff agreed to be bound by the terms of the

Susser Holdings Arbitration Agreement.   But if there is, that dispute is to be decided by

---

[52] Peaks Affidavit, Exh. A.
[53] Exh. A-14, Application for Employment, December 20, 2007.
[54] Exh. A-14, Application for Employment, December 20, 2007.
[55] Exh. A-15, Personnel Action Record.

the arbitrator.[56]   The Arbitration Agreement Plaintiff signed is a mutually binding arbitration agreement that requires both Plaintiff and Defendant to submit to binding arbitration any existing or future claims or disputes between them.[57] *See In re SSP Partners*, 241 S.W.3d 162 (Tex. App.—Corpus Christi 2007, orig. proceeding) (enforcing on petition for writ of mandamus identical Election and Arbitration Agreement with predecessor/merged Defendant).

### 2.      The FAA applies to the Arbitration Agreement.

3.6      There also can be no dispute that the Arbitration Agreement is governed by the FAA. The United States Supreme Court has stated that the parties to an arbitration agreement may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Sciences v. Bd. of Trustees,* 489 U.S. 468, 479 (1989). "The parties may designate which arbitration act they wish to control proceedings under the contract, and the courts will honor that choice." *Russ Berrie and Co.* v. *Gantt*, 998 S.W.2d 713, 715 n.6 (Tex. App.—El Paso 1999, no pet.); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66 (1995) (recognizing that parties may specify by contract the rules under which arbitration will be conducted).  If the parties designate that the arbitration will be governed by the FAA, then the court will apply the FAA. *Mastrobuono*, 514 U.S. at 66; *Volt*, 489 U.S. at 472.

3.7      Plaintiff and Defendant agreed for the FAA to apply to the Arbitration Agreement. The Arbitration Agreement explicitly incorporates the Arbitration Procedures[58] set forth

---

[56] Exh. A-3, Susser Plan Election and Arbitration Agreement; Susser Policy and Procedures.
[57] Exh. A-3, Employee Injury Benefit Plan; Election and Arbitration Agreement; Arbitration Policy and Procedures.
[58] Exh. A-3, Susser Holdings Plan, pg. 1, Sec. II.

in Section IX of the Susser Holdings Summary Plan Description[59] , which specifically

applies the FAA to the Arbitration Agreement. The Arbitration Procedures specifically

provide:

> **9. Interstate Commerce and the Federal Arbitration Act:** I understand
> and agree that the Company is involved in transactions involving interstate
> commerce (*e.g.*, purchasing goods and services from outside Texas which
> are shipped to Texas; utilizing the interstate mail, telephone and highway
> systems; operating facilities serving people from various states; and
> recruiting and advertising outside Texas) and that my employment with the
> Company and participation in the Plan involve such commerce. The
> Federal Arbitration Act, Title 9 of the United States Code, will govern the
> interpretation, enforcement, and all judicial proceedings under and/or with
> respect to the Election and Arbitration Agreement and Section I,
> Paragraph B of the Plan (Section IX of this Summary).[60]

The Election and Arbitration Agreement and Arbitration Procedures stipulate that

Defendant is engaged in interstate commerce.[61]   In addition, Defendant purchases

products from outside the state of Texas and has them delivered to its Texas locations

and also sells products that are used and transported outside of the state of Texas.[62]

3.8     The El Paso Court of Appeals, construing the virtually identical SSP Plan and

SSP Plan Election and Arbitration Agreement, held that this provision makes the FAA

applicable to the Arbitration Agreement, and that the Arbitration Agreement was valid

and binding. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex. App.—El Paso

2005, orig. proceeding).   Again, Plaintiff also agreed to the terms of the SSP Plan

Election Agreement and has not revoked that agreement.[63]

---

[59] Exh. A-3, Susser Holdings Plan SPD, Sec. IX (5)..
[60] Exh. A-3, Susser Holdings Arbitration Policy and Procedures.
[61] Exh. A-3, Susser Holdings Plan Election and Arbitration Agreement, pg. 22; Susser Arbitration Policy and Procedures.
[62] Peaks Affidavit, Exh. A.
[63] Peaks Affidavit, Exh. A.

3.9    Therefore, Defendant has established that it and Plaintiff agreed to the Susser Holdings Arbitration Agreement and that arbitration of Plaintiff's claims made in this lawsuit will be governed by the FAA, satisfying the first requirement under federal precedent.

3.10   Defendant must now only establish that this dispute falls within the scope of the subject arbitration agreement.

### 3.    The Arbitration Agreement covers this dispute.

3.11   Once the movant establishes that the arbitration agreement exists, the court must determine whether the dispute falls within the scope of the arbitration agreement. *Id. See In re SSP Partners*, 241 S.W.3d 162 (Tex. App.—Corpus Christi 2007, orig. proceeding) (enforcing on petition for writ of mandamus identical Election and Arbitration Agreement with SSP Partners).

### a.  Any dispute about the Arbitration Agreement is itself arbitrable.

3.12   Under the terms of the Arbitration Agreement, any dispute about its validity, enforceability or scope is to be arbitrated.[64]   When "clear and unmistakable evidence" exists that the parties intended for an arbitrator to decide "gateway matters" such as whether a valid, enforceable arbitration agreement exists, the courts defer such matters to the arbitrator for determination. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777–78 (2010) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) (arbitrability issue is for arbitrator if parties so agree by "clear and unmistakable" evidence)). "Clear and unmistakable evidence" exists here that disputes

---

[64] Exh. A-3, Susser Plan, Section I, B.4.c.

about the validity, enforceability and scope of the Arbitration Agreement are subject to determination by the arbitrator, because the Arbitration Agreement expressly calls for the arbitrator to decide issues of arbitrability:

> Examples of the <u>types</u> of claims covered by this Agreement include, <u>but are not limited to</u>, any and all: . . . **claims challenging the existence, validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.**[65]
>
> **. . .**
>
> **The hearing arbitrator shall have the authority to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the agreement to arbitrate.**[66]

As a result, the Court should compel Plaintiff to arbitration and stay this action until the conclusion of that arbitration.

### b.  All Plaintiff's disputes are subject to the Arbitration Agreement.

3.13   The Susser Holdings Election and Arbitration Agreement provides that it covers "all claims and disputes that [the Participant] . . . may <u>now</u> have or may in the <u>future</u> have against the Company and/or against its successors . . ."[67]   The Susser Holdings Election and Arbitration Agreement lists some of the claims that it covers:

> Examples of the <u>types</u> of claims covered by this Agreement include, <u>but are not limited to</u>, any and all:
> - claims for wages or other compensation;
> - claims for breach of any contract, covenant or warranty (express or implied);
> - tort claims, including negligence, negligence per se and gross negligence claims (including claims for personal or bodily injury or physical, mental or psychological injury, without regard to whether such injury was sustained on the job)

---

[65] Exh. A-4, Election and Arbitration Agreement.
[66] Exh. A-3, Susser Holdings Arbitration Policy and Procedures, Sec. 4.C.
[67] Exh. A-3, Election and Arbitration Agreement.

---

- claims for wrongful termination (including retaliatory discharge claims);
- claims of harassment or discrimination (including claims based on . . . age, medical condition or disability);
- claims for benefits under the Plan . . .; and
- claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.[68]

3.14   Plaintiff alleges Defendant unlawfully failed to maintain workers' compensation insurance.[69]   Plaintiff alleges she was retaliated against when she was terminated as "part of a larger unwritten plan or scheme of the Defendant corporation to discriminate against injured and older employees."[70]   In addition and, in the alternative, Plaintiff asserts non-subscriber negligence[71] and requests corresponding damages for her personal injury claims.[72]   She also claims to have been subjected to disparate treatment due to her disabilities[73] and her age[74] and suffered damages as a result of alleged libel, slander and defamation.[75]

3.15   All Plaintiff's claims against Defendant must be compelled to arbitration.   Clearly, Plaintiff's alleged claims against Defendant are squarely within the scope of the valid Arbitration Agreement that she elected to accept, as are her claims that she was retaliated against for exercising her rights under the Susser Holdings Plan or that the Plan was breached.   Likewise, her claims for discrimination and defamation are also covered claims.   All claims are subject to arbitration.

---

[68] Exh. A-4, Susser Plan Election and Arbitration Agreement, pg. 2.
[69] Plaintiff's Original Petition, ¶ 7.12.
[70] Plaintiff's Original Petition, ¶ 7.4.
[71] Plaintiff's Original Petition, ¶¶ 7.12.
[72] Plaintiff's Original Petition, Section VIII.
[73] Plaintiff's Original Petition, ¶ 6.2.
[74] Plaintiff's Original Petition, ¶ 7.3.
[75] Plaintiff's Original Petition, ¶¶ 7.8 – 7.11.

**B.      Federal law favors binding arbitration in this case.**

3.16    Federal law strongly favors arbitration, and a presumption exists in favor of agreements to arbitrate under the FAA that requires courts to resolve any doubts about an arbitration agreement's scope in favor of arbitration.  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).   Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings.  *See Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 447 (S.D. Tex. 2012); *Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 993 (S.D. Tex. 2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("The FAA 'leaves no place for the exercise of discretion by a district court . . . agreements to arbitrate must be enforced, absent a revocation of the contractual agreement.'")).

3.17    In fact, a motion to compel arbitration under the FAA should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986). Consequently, the burden is on the non-movant to show that his/her claims fall *outside* the scope of the arbitration agreement. *Id.* Moreover, the burden of proving any defense to an arbitration agreement also is on the non-movant.  *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002).

**C.      Plaintiff Agreed to Arbitrate Under Susser Holdings Arbitration Agreement.**

3.18   As set out above, the Susser Holdings Arbitration Agreement is valid, binding, and enforceable.  It meets the requirements recited by *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384 (5th Cir. 2006).  Plaintiff not only signed the Arbitration Agreement in April 2009,[76] before her injury in July 2012, she signed the *exact same agreement* in February 2008[77] and even accepted benefits under the subject Susser Holdings Employee Injury Benefit Plan in November 2009.[78]  She seeks benefits under the *exact same plan* now for the alleged injury the subject of her lawsuit.[79]

3.19   In the alternative, Plaintiff is also bound to arbitrate under the terms of the "Agreements to Arbitrate" she signed as part of her March 2009 Employment Application, together with the Susser Holdings, L.L.C. and Affiliates Arbitration Policy and Procedures, which she received.

3.20    In the alternative, Plaintiff is also bound to arbitrate under the terms of the "Agreements to Arbitrate" she signed as part of her December 2007 Employment Application, as well as under the terms of the SSP Plan Arbitration Agreement,[80] in which Plaintiff enrolled in December 2007.[81]  Plaintiff acknowledged and agreed that the SSP Plan would apply to "all claims and disputes," whether she was aware of the claims at the time of signing or "in the future."[82]  Plaintiff agreed to abide by the SSP Partners

---

[76] Exh. A-4, Election and Arbitration Agreement; Exh. A-5 Employee Acknowledgement of Arbitration Policy and Procedures.
[77] Exh. A-8, Election and Arbitration Agreement; Exh. A-9 Employee Acknowledgement of Arbitration Policy and Procedures.
[78] Exh. A-6, Check Register Reports.
[79] Peaks Affidavit, Exh. A-3; Exh. A-6, Check Register Reports.
[80] Exh. A-10, SSP Partners Arbitration Policy and Procedures.
[81] Exh. A-11, SSP Election and Arbitration Agreement.
[82] Exh. A-11, SSP Election and Arbitration Agreement.

Arbitration Policy and Procedures[83] after she had separately agreed to arbitrate any and all claims arising out of her employment by Susser Holdings, including future claims, when she signed her 2007 Employment Application.[84]   Plaintiff later became employed on or about December 28, 2007.[85]

3.21   As with the Susser Holdings Plan, the SSP Plan is a valid agreement to arbitrate. The SSP Plan has previously been found to be valid and enforceable.   *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d at 880.

3.22   Plaintiff's claims are within the scope of the SSP Arbitration Agreement as well. Specifically, the SSP Election and Arbitration Agreement provides a non-exclusive list of the types of claims to which it applies:

- claims for wages or other compensation; . . .
- tort claims, including negligence . . .
- claims for harassment or discrimination (including claims based on . . . age, medical condition or disability);
- claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute.[86]

As is apparent on the face of Plaintiff's Original Petition, Plaintiff's claims are within the scope of the agreement to arbitrate.

3.23   Plaintiff has never revoked any of her Elections at any time.[87]

3.24   Absent Plaintiff's carrying her burden of establishing a defense to arbitration, this matter should be stayed and the parties compelled to conduct arbitration in compliance

---

[83] Exh. A-12, SSP Partners Arbitration Policy and Procedures; Exh. A-13, Employee Acknowledgement and Receipt of SSP Partners Arbitration Policy and Procedures.
[84] Exh. A-14, 2007 Application for Employment.
[85] Exh. A-15, Personnel Action Record.
[86] Exh. A-12, Election and Arbitration Agreement.
[87] Peaks Affidavit, Exh. A.

with the Susser Holdings Arbitration Agreement or, in the alternative, the SSP Arbitration Agreement.

## IV.  Plaintiff Has Waived Right to Jury Trial

4.1    As set out above, Susser Holdings Election and Arbitration Agreement clarifies that the employee is electing to waive his/her right to a jury and agree to arbitration in exchange for eligibility for the Susser Holdings Plan's benefits.[88]   The Arbitration Agreement being valid, enforceable and binding and Plaintiff's claims being within the scope of the Arbitration Agreement, Plaintiff has waived her right to have a jury trial on her claim. According, Defendant requests this Court find that Plaintiff has waived her right to proceed before a jury.

## V.  Supporting Documentation

Defendant offers and incorporates by reference the following exhibits in support of its motion to compel arbitration:

**Exhibit A**    Affidavit of Otis Peaks in Support of Motion to Compel;

**Exhibit A-1**  Application for Employment (March 25, 2009);

**Exhibit A-2**  Personal Action Record (April 2009);

**Exhibit A-3**  Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description, including Election and Arbitration Agreement, and Susser Holdings, L.L.C. Arbitration Policy and Procedures (effective January 1, 2008);

**Exhibit A-4**  Election and Arbitration Agreement (signed April 2009);

**Exhibit A-5**  Employee Acknowledgement of Receipt of the Susser Holdings, L.L.C. Arbitration Policy and Procedures (signed April 2009);

---

[88]  Exh. A-3, Susser Holdings, L.L.C. Employee Injury Benefit Plan Summary Plan Description (Election and Arbitration Agreement).

**Exhibit A-6**  Check Register Reports (November 2009 and July 2012);

**Exhibit A-7**  HIPAA Authorization (July 2012);

**Exhibit A-8**  Election and Arbitration Agreement (signed February 2008);

**Exhibit A-9**  Employee Acknowledgement of Receipt of the Susser Holdings, L.L.C. Arbitration Policy and Procedures (signed February 2008);

**Exhibit A-10** SSP Partners Employee Injury Benefit Plan Summary Plan Description (effective 2005);

**Exhibit A-11** Election and Arbitration Agreement (signed December 2007);

**Exhibit A-12** SSP Partners Arbitration Policy and Procedures (effective 2004);

**Exhibit A-13** Employee Acknowledgement of Receipt of the SSP Partners Arbitration Policy and Procedures (signed December 2007);

**Exhibit A-14** Application for Employment (signed December 2007); and

**Exhibit A-15** Personnel Action Record (signed December 2007).

## VI.    Conclusion

6.1    Having met the requirements of the federal courts, Defendant is entitled to an order compelling Plaintiff to submit all of her claims in this lawsuit against Defendant to binding arbitration in accordance with the terms of the arbitration agreements she signed, and formally staying the proceedings in this Court against Defendant until the filing of an arbitral award.

## VII.    Certificate of Conference

7.1    Counsel for Defendant has made attempts to obtain the consent of the Plaintiff to this motion and has been unsuccessful.

**WHEREFORE, PREMISES CONSIDERED,** Defendant, Stripes LLC, Successor by Merger to SSP Partners, a Texas General Partnership, prays for an order granting this Motion to Stay Proceedings and Compel Arbitration and issuing an order compelling Plaintiff to submit her claims to binding arbitration in accordance with the terms of the Susser Holdings, L.L.C. Election and Arbitration Agreement and Arbitration Policy and Procedures, or in the alternative, in accordance with the terms of the SSP Partners Election and Arbitration Agreement and Arbitration Policy and Procedures, or the Arbitration Agreements contained in Defendant's Employment Applications, and staying Plaintiff's action in this Court against Defendant until the submittal of an arbitral award or a motion to dismiss.

Respectfully submitted,

*/s/ Tonya Beane Webber*

**Tonya Beane Webber, Lead Counsel**
So. Dist. I.D. No. 6145
Texas Bar No. 21042300
Email: twebber@prdg.com
(361) 880-5824 – Direct line

**Lisa P. Alcantar, Co-Counsel**
So. Dist. I.D. No. 1093319
Texas Bar No. 24069284
Email: lalcantar@prdg.com
(210) 547-9325 – Direct line

**ATTORNEYS-IN-CHARGE FOR DEFENDANT, STRIPES LLC SUCCESSOR BY MERGER TO SSP PARTNERS, A TEXAS GENERAL PARTNERSHIP**

**OF COUNSEL:**

**PORTER, ROGERS, DAHLMAN & GORDON, P.C.**
One Shoreline Plaza
800 N. Shoreline Blvd., Suite 800
Corpus Christi, Texas  78401
Telephone:   (361) 880-5808
Telefax:        (361) 880-5844
Trinity Plaza II
745 E. Mulberry Ave., Suite 450
San Antonio, Texas 78212
Telephone:   (210) 736-3900
Telefax:        (210) 736-1992

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been sent via **ELECTRONIC SERVICE OR CERTIFIED U.S. MAIL/RETURN RECEIPT REQUESTED** to counsel listed below on this the 30th day of May 2013.

**VIA CMRRR NO. 7010 1670 0001 3329 7809**
**AND ELECTRONIC SERVICE**
Carlos E. Hernandez
THE LAW OFFICES OF CARLOS E. HERNANDEZ, JR., P.C.
200 East Cano St.
Edinburg, Texas 78539-4510

*/s/ Tonya Beane Webber*

Tonya Beane Webber